UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
ROBERT POKORNY,

                            Plaintiff,

     -against-

MICHAEL J. ASTRUE, Commissioner of Social
Security

                            Defendant.
----------------------------------------------------------------X

**MEMORANDUM & ORDER**

**09-CV-1694 (NGG) (JO)**

NICHOLAS G. GARAUFIS, United States District Judge.

Plaintiff Robert Pokorny ("Pokorny") brings this action under 42 U.S.C. § 405(g) seeking judicial review of the Social Security Administration's ("SSA's") denial of his claim for Supplemental Security Income ("SSI"). (Complaint (Docket Entry # 1).) Pokorny moves for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). ("Pokorny's Motion" (Docket Entry # 16).) The Commissioner of Social Security (the "Commissioner") moves for remand and opposes Pokorny's motion. ("Commissioner's Motion" (Docket Entry # 18).) As set forth below, the court remands the proceedings to the Commissioner.

I.    **STANDARD OF REVIEW**

    A.    **Rule 12(c)**

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." The standard of review under a Rule 12(c) motion is the same standard applied under a Rule 12(b)(6) motion. Bank of N.Y. v. First Millennium, Inc., 607 F.3d 905, 922 (2d Cir. 2010). To survive a Rule 12(b)(6) motion, the complaint must contain "sufficient factual matter . . . to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1948 (2009). A court is

1

required "to accept as true all allegations in the complaint and draw all reasonable inferences in favor of the non-moving party." Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co., 517 F.3d 104, 115 (2d Cir. 2008). In addition to considering the pleadings, the court may consider "statements or documents incorporated by reference in the pleadings . . . and documents possessed by or known to the plaintiff and upon which it relied in bringing the suit." ATSI Commc'ns, Inc. v. Schaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007).

### B. Administrative Review

"A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error." Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (quoting 42 U.S.C. § 405(g)). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Moran v. Astrue, 569 F.3d 108, 112 (2d Cir. 2009). "[I]t is up to the agency, and not [the] court, to weigh the conflicting evidence in the record." Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir. 1998). "Legal error" consists of incorrect determinations on points of statutory or regulatory law made by the Commissioner. Townley v. Heckler, 748 F.2d 109, 112 (2d Cir. 1984). In assessing a legal determination made by the Commissioner, "[the] court cannot fulfill its statutory and constitutional duty to review the decision of the administrative agency by simply deferring to the factual findings of the ALJ. Failure to apply the correct legal standards is grounds for reversal." Id.

## II. BACKGROUND

Pokorny was born on April 17, 1954. (Administrative Transcript ("Tr.") (Docket Entry # 5) at 32.) In 2005, he worked as a busboy at Starbucks for approximately six months. (Tr. 33.)

On September 28, 2006, he filed a claim for SSI alleging disability due to "liver disease, depression and weakness." (Id. at 66.) On September 28, 2006, his claim was denied by the SSA. (Id. at 63-70.) On May 15, 2007, Pokorny requested review of his claim before an Administrative Law Judge ("ALJ"). (Id. at 72-74.) ALJ Jeffrey Jordan held a hearing on August 1, 2008 to review Pokorny's claim. (Id. at 24-69.) On September 30, 2008, the ALJ issued an unfavorable decision. (Id. at 6-19.) On November 6, 2008, Pokorny sought review of this Notice and Decision before the SSA Appeals Council. (Id. at 5.) And on March 6, 2009, the Appeals Council denied Pokorny's request to review his claim. (Id. at 20-23.) By operation of 42 U.S.C. § 405(g), this became the final decision of the Commissioner. Pokorny timely filed his Complaint on April 24, 2009. See 42 U.S.C. § 405(g).

## III. DISCUSSION

### A. Standard for Determining Disability

To determine whether a claimant is entitled to DIB or SSI, an ALJ utilizes a five-step analysis, as set forth in 20 C.F.R. § 404.1520(a)(4). The Second Circuit, in Dixon v. Shalala, described this five-step analysis:

> The first step in the sequential process is a decision whether the claimant is engaged in "substantial gainful activity." If so, benefits are denied.
>
> If not, the second step is a decision whether the claimant's medical condition or impairment is "severe." If not, benefits are denied.
>
> If the impairment is "severe," the third step is a decision whether the claimant's impairments meet or equal the "Listing of Impairments" . . . of the social security regulations. These are impairments acknowledged by the Secretary to be of sufficient severity to preclude gainful employment. If a claimant's condition meets or equals the "listed" impairments, he or she is conclusively presumed to be disabled and entitled to benefits.
>
> If the claimant's impairments do not satisfy the "Listing of Impairments," the fourth step is assessment of the individual's "residual functional capacity," i.e., his capacity to engage in basic work activities, and a decision whether the

claimant's residual functional capacity permits him to engage in his prior work. If the residual functional capacity is consistent with prior employment, benefits are denied.

If not, the fifth and final step is a decision whether a claimant, in light of his residual functional capacity, age, education, and work experience, has the capacity to perform "alternative occupations available in the national economy." If not, benefits are awarded.

54 F.3d 1019, 1022 (2d Cir. 1995). The ALJ used this five step analysis in assessing Pokorny's claim. (Tr. at 9-19.)

### B. The ALJ's Findings

#### 1. Steps One to Three

Under the first step of the analysis, the ALJ found that Pokorny was not engaged in "substantial gainful activity." (Tr. at 11.) No party disputes this finding. Under the second step of the analysis, the ALJ found that Pokorny suffered from the following severe impairments: affective disorder, panic disorder without agoraphobia, personality disorder, liver disease, and, with an onset date of April 8, 2007, open reduction internal fixation fracture of his right humerus. (Id. at 11.) The ALJ also found that Pokorny also suffered from diabetes mellitus but that the condition was not "severe" under the step-two framework. (Id.) No party disputes these findings. Under the third step, the ALJ performed a thorough analysis of the SSA's Listing of Impairments to determine that none of Pokorny's impairments, alone or in combination, required a finding that Pokorny was conclusively disabled for the purpose of receiving SSI. (Id. at 11-13.) No party disputes this finding.

#### 2. Step Four

*a. Treating Physician Evidence*

The parties dispute the ALJ's analysis regarding step four. Pokorny argues that the ALJ's analysis regarding step four constituted legal error in that the ALJ did not afford

4

"controlling weight" to the opinion of Dr. John Chiang, one of Pokorny's treating psychiatrists, under the "treating physician rule." (Pokorny's Motion at 13-16.) In reviewing Dr. Chiang's opinion, the ALJ stated that he had given the opinion "significant weight" regarding its diagnosis of Pokorny's limitations, but nonetheless found Pokorny to possess "residual functional capacity" as "supported by the evidence as a whole." (Tr. at 17.) The Commissioner does not dispute that the ALJ committed legal error. (Commissioner's Motion at 21-25.)

The treating physician rule requires an ALJ to give a claimant's treating physician's opinion "controlling weight" if the treating physician's "opinion on the issue(s) of the nature and severity of [the claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2). "[A]n ALJ may not reject a treating physician's disability opinion based 'solely' on internal conflicts in that physician's clinical findings." Carvey v. Astrue, No. 09-cv-4438, 2010 WL 2264932, at *2 (2d Cir. June 7, 2010) (citing Balsamo v. Chater, 142 F.3d 75, 80 (2d Cir. 1998)). But, where other medical opinions in the record contradict the treating physician's opinion, an ALJ need not give the treating physician's opinion controlling weight. (Id.)

If an ALJ does not give controlling weight to the treating physician's opinion, the ALJ must assess several factors to determine how much weight to give the assessment. 20 C.F.R. § 404.1527(d)(2). An ALJ must assess the length, nature, and extent of the treatment relationship; the "supportability" of the medical opinion; the consistency of the opinion with other evidence in the record; the treating physician's specialization, if any; and any other factors the claimant may bring to an ALJ's attention. 20 C.F.R. §§ 404.1527(d)(2)-(d)(6). While an ALJ need not recite each one of these factors by rote, it must be clear from the Notice and

Decision that "the ALJ applied the substance of the treating physician rule." Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004). In any event, an ALJ must provide "good reasons" for the lack of weight given to the treating physician's opinion. Kennedy v. Astrue, 343 F. App'x 719, 722 (2d Cir. 2009). "A reasonable basis for doubt that the ALJ applied the correct legal standard in determining the weight to afford the treating physician can be grounds for remand." Sutherland v. Barnhart, 322 F. Supp. 2d 282, 291 (E.D.N.Y. 2004) (citing Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987)).

The administrative record demonstrates that Dr. Chiang opined on several occasions that Pokorny had marked or extreme limitations of his ability to interact with others in a work setting. (See Tr. at 438-44 (Oct. 2, 2006); 499-501 (July 2, 2008); 509-15 (unknown).) These opinions were based on personal examinations made by Dr. Chiang of Pokorny. (Id.) Nothing in the ALJ's opinion, or the record as a whole, indicates that these findings were inconsistent with the opinions of other physicians or the SSA's medical examiner. Consequently, Dr. Chiang's opinions concerning Pokorny's limitations were entitled to controlling weight under the treating physician rule. See 20 C.F.R. § 404.1527(d)(2). It was legal error, therefore, for the ALJ to afford Dr. Chiang's opinion only "substantial weight," and to find that Pokorny was "capable of performing simple, routine, unskilled tasks involving minimal stress and minimal contact with people" contrary to Dr. Chiang's opinion.

*b. Pokorny's Credibility*

To assess a claimant's allegations concerning the severity of his disabilities, an ALJ must engage in a two-step analysis. First, "the ALJ must decide whether the claimant suffers from a medically determinable impairment that could reasonably be expected to produce the symptoms alleged." Genier v. Astrue, 606 F.3d 46, 49 (2d Cir. 2010) (citing 20 C.F.R. § 404.1529(b)). And second, "[i]f the claimant does suffer from such an impairment . . . the ALJ must consider

6

the extent to which the claimant's symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence of record." Id. (internal quotations omitted) (citing 20 C.F.R. § 404.1529(a)). If an ALJ finds that the claimant's testimony is not consistent with the medical evidence of record, the ALJ must weigh the credibility of the claimant's testimony in light of:

> (1) the claimant's daily activities;
>
> (2) the location, duration, frequency, and intensity of the pain;
>
> (3) precipitating and aggravating factors;
>
> (4) the type, dosage, effectiveness, and side effects of any medications taken to alleviate the pain;
>
> (5) any treatment, other than medication, that the claimant has received;
>
> (6) any other measures that the claimant employs to relieve the pain; and
>
> (7) other factors concerning the claimant's functional limitations and restrictions as a result of the pain.

Meadors v. Astrue, 370 F. App'x 179, 184 n.1 (2d Cir. 2010) (citing 20 C.F.R. § 404.1529(c)(3)).

Pokorny argues that, under step four, the ALJ committed legal error by finding his "statements concerning the intensity, persistence and limiting effects of [his] symptoms [] not credible to the extent they are inconsistent with the residual functional capacity assessment for the reasons explained below," (Tr. at 15) without "explaining below" the supposed inconsistencies. (Pokorny's Motion at 18-20.) While the ALJ completed step one of the credibility analysis, finding that Pokorny's complaints could "reasonably be expected to produce the symptoms alleged," the record indicates that the ALJ, by accident or design, did not conduct step two. This, too, constitutes legal error.

7

3.  The ALJ's Findings: Step Five

Under step five, to determine whether a claimant can perform "alternative occupations available in the national economy," see Dixon, 54 F.3d at 1022, an ALJ may rely on the testimony of a vocational expert ("VE"). Social Security Ruling 00-4p. The evidence presented to a VE of a claimant's limitations must "accurately reflect the limitations and capabilities of the claimant involved." Calabrese v. Astrue, 358 F. App'x 274, 276 (2d Cir. 2009). The evidence "need not frame the claimant's impairments in the specific diagnostic terms used in the medical reports, but instead should capture the concrete consequences of those impairments." Id. at 277 (quoting England v. Astrue, 490 F.3d 1017, 1023 (8th Cir. 2007)).

Pokorny argues that the ALJ erred in finding that he was capable of performing work that "exists in significant numbers in the national economy" (Tr. at 18.) because the evidence presented to the VE, in the form of a hypothetical, did not take into account the limitations described by Dr. Chiang. (Pokorny's Motion at 16-18.) At Pokorny's hearing, the ALJ asked the VE to consider whether Pokorny could perform any jobs in the national economy, if he were to assume that

> due to depression, anxiety this individual is limited to simple, unskilled, or routine work and the individual also due to a mental impairment has moderate deficiencies in social functioning resulting in being limited to work involving no more than minimal contact with supervisors, co-workers and the general public.

(Tr. 54.) The administrative transcript reveals that this description of Pokorny's mental impairments did not "accurately reflect [his] limitations and capabilities." See Calabrese, 358 F. App'x at 276. Diagnoses by Dr. Chiang indicate that Pokorny had "marked" or "extreme" limitations in his ability to "[r]espond appropriately to supervision and criticism" or to "[t]olerate work related stress." (Tr. at 441.) And the SSA's own medical examiner, Dr. Kenneth Cochrane, opined that Pokorny was "unable to relate adequately with others" and "unable to

8

appropriately deal with stress." (Id. at 365.) These do not seem to reflect the hypothetical presented to the VE that Pokorny could engage in even "minimal contact with supervisors, co-workers, and the general public." (Id. at 54.) If these did, somehow, accurately reflect the medical evidence, the ALJ certainly did not give any explanation as to how. This constituted legal error.

### C. Disposition

On reviewing a decision of the Commissioner where the ALJ committed legal error, the court may either "(1) remand[] for reconsideration by the Commissioner upon the existing record or upon a record to be amplified, or (2) remand[] for calculation of benefits." Balsamo v. Chater, 142 F.3d 75, 82 (2d Cir. 1998). Courts distinguish these remedies by referring to the former as "remand" and the latter as "reversal." See id. "Where the administrative record contains gaps, remand to the Commissioner for further development of the evidence is appropriate. . . . [as] further findings would so plainly help to assure the proper disposition of the claim . . . ." Butts v. Barnhart, 388 F.3d 377, 385 (2d Cir. 2004). Inversely, if remand would not serve this purpose, reversal is the better course of action. Id. at 385-86.

Pokorny argues that the ALJ's legal errors mandate the reversal of the decision of the Commissioner, rather than remand, insofar as the record demonstrates that Pokorny is disabled and further development of the evidence would serve no purpose. (Pokorny's Motion at 20.) While the Commissioner agrees that the ALJ committed legal error, he argues that proceedings should be remanded as opposed to reversed because other evidence in the record "needs to be clarified." ("Commissioner's Reply" (Docket Entry # 20) 1-5.)

The parties' positions are not mutually exclusive. By failing to afford Dr. Chiang's opinion controlling weight, and by improperly discounting Pokorny's complaints of his own

9

symptoms, the ALJ clearly erred in his determination of Pokorny's residual functional capacity. At the same time, the introduction of further evidence would serve little purpose. Both parties have had a substantial opportunity to present evidence of Pokorny's claim to the ALJ, who erred only in its legal thrust, not its heft of substance. Therefore, the court remands the case to the Commissioner with specific directions to the ALJ: The ALJ should give Dr. Chiang's opinion controlling weight and reassess Pokorny's statements concerning the severity of his symptoms, without conducting a new hearing. The ALJ should then accordingly redetermine Pokorny's residual functional capacity. Assuming that the ALJ finds that, under this new residual functional capacity, Pokorny is capable of performing his past relevant work, the ALJ may find that Pokorny is not disabled. Oppositely, if the ALJ finds that Pokorny is not capable of performing his past relevant work, then the ALJ should reassess Pokorny's ability to perform work in the national economy, under step five, including conducting a new hearing with a VE.

## IV. CONCLUSION

For the reasons discussed above, the court remands the proceedings to the Commissioner consistent with the above instructions.

SO ORDERED.

Dated: Brooklyn, New York
December 1b, 2010

s/Nicholas G. Garaufis

NICHOLAS G. GARAUFIS
United States District Judge